BREAUX, O. J.
Plaintiff sued his principal on a contract of employment for services rendered in accordance with an agency with which he was charged.
He claims the sum of $23,802.21 and interest.
He is an attorney at law, and practiced his profession in the city of New York.
Mrs. Murdock, the principal, since the appeal was filed in this court departed this life. The executor of her will was made a party in this court.
Plaintiff met Mrs. Murdock in the city of Vicksburg. She was an interdict under the laws of Mississippi, and felt keenly the restraint the authorities of the law had seen proper to place around her in order to safeguard her property.
Steps were taken to obtain the removal of the decree of interdiction.
Plaintiff in that suit assisted the defendant, employed attorneys, and gave the suit some attention.
She gained her suit. The judgment of interdiction was removed, and her property was returned to her possession.
It had been well managed under the court’s decree while she was interdicted, and, when delivered, it was in a fair state of cultivation, and yielded a satisfactory return to the defendant.
We infer it was different two years subsequently, while under management of plaintiff.
Plaintiff’s mother and Mrs. Murdock were close friends, dating back from their early days when they were members of the same class at school.
In addition to the confidence defendant had in the son (the plaintiff),, prompted by the friendship for the mother, defendant had given some assistance in obtaining the removal of her interdiction. He at the time had her unlimited confidence. She proposed to the young plaintiff to employ him to take charge of her business affairs.
A contract was drawn and signed, in which she bound herself to pay him $4,000 a year for six years for his services.
Accompanying the contract and as necessary for him to properly perform the duties of his employment, she appointed him her agent with full power to manage all her business affairs in the two states.
She was in need of an agent. She could not intelligently attend to business of the character required to carry on plantation operations. She had two cotton plantations in Louisiana and a small place in Mississippi, besides movable property and paper values, all of which were placed under the control and management of the plaintiff.
'She was the widow of the late N. D. Murdock.
Her husband accumulated quite a competency. Dying, he made her his legatee. They had no forced heirs.
At least four times during their married life she was placed in an asylum because of her mental condition.
About the time of the death of her husband, she became an inmate of the asylum at Jackson, Miss., and the court rendered a decree of interdiction, which was subsequently removed as before stated.
We infer from the facts and circumstances, made evident by the record, that she was of a nervous temperament, and at times unable to properly control her mind.
As she had been released from the law’s restraining influence, we have to consider her case as that of a person sui juris, without overlooking, however, that in her nervous condition of mind she was entitled to every reasonable consideration in all that related to her business affairs.
After the property had been delivered into the possession of plaintiff, she became extremely extravagant, and, we infer, lived *919 beyond her means. She drank intoxicants to excess at times.
At the end of the first year of plaintiff’s gestión, he prepared an account which she signed. It consisted of a list of different amounts which plaintiff submitted to his principal, and it ends with an unsustained statement of a large indebtedness to him.
This statement she approved and signed.
The plaintiff thereafter continued with the management.
About the end of the second year the defendant chose to put an end to plaintiff’s employment. She notified him to consider himself discharged, and to surrender possession and management of the property to Judge E. O. Montgomery, his successor.
The right of defendant to discharge plain-* tiff is the first question before us for decision. •
Mr. Holmes, defendant’s employé, was not defendant’s servant or ordinary overseer or manager. He was her trusted agent, and had the administration, supervision, and control of her business affairs.
After her confidence had been shaken, she did not discharge him for good cause.
The mandate could be removed, even if she had not had good cause.
The principal may revoke his power of attorney whenever he thinks proper if the agency was not an agency with an interest. Oiv. Code, art. 302S.
The contract between the parties, inseparably connected with the deed conferring the agency, created in our opinion a mandate. The terms and conditions of the contract do not give rise to the thought that it secured to plaintiff unearned salary claimed in case the defendant decided to put an end to the employment.
Moreover, the death of defendant, before noted, had the effect of putting an end to the agency, so that all claim for unearned salary passes out of consideration.
As to cause for discharging plaintiff:
Her personal property of which plaintiff had control amounted to $46,434.40. In accounting for it the bookkeeping had been incomplete and insufficient, and in some instances entirely wanting of entries which is required in bookkeeping. It did not satisfactorily show what had become of a number of dollars expended according to statement.
In addition, she was in debt for over $16,-000.
She doubtless thought that a change was necessary in order to escape ruin.
An agent was needed who would bring more conservative influence to bear as relates to business affairs on all concerned, from the' first to the last.
In this, after having carefully examined the condition of affairs, we cannot hold that she erred in discharging plaintiff.
At this point it occurs to us to take up again the account, to which we referred above, as having been rendered by plaintiff at the end of the first year of his gestión.
As to this account, plaintiff’s position is that the account' was one rendered to the defendant, theaccountee; that it made complete proof and operated as a release from any further inquiry, because she had approved it.
If this account were near correct, it would be different.
The account of July, 1906, cannot be considered correct. The columns “credit” and “debit” were not added. Deducting the one from the other, the error is evident if the statement in red ink is to be taken as showing the correct balance after deducting the one from the other. The difference is great, taking the respective addition of the column into account.
The oversight of the accountant, if an oversight, discredits the accounting of that date. The balance arrived at is arbitrary. The *921 defendant sustained her defense that the approval of said account was an error.
It must be borne in mind that it devolved upon plaintiff to sustain his account under the circumstances. 1 Rice on Evidence, 103-142; 5 Current Law, 89; 3 Current Law, 380; McAllister v. Srodes, 14 La. 443; Scarborough v. Stevens, 3 Rob. 148; Succession of Peytavin, 7 Rob. 478; Succession of Desorme, 10 Rob. 474; Police Jury v. Herbert, 2 La. Ann. 149.
On the subject of agency and the necessity of rendering a complete account to the principal 'Story has several highly interesting paragraphs. There must be perfect fairness, adequacy, and equity on the part of the attorney. Story, Equity Jurisprudence, 312a, 312b, 312c.
We take as a basis the item above referred to as stated in red ink, on account of July, 1906, viz., $4,196.81.
The appellee does not particularly object to it.
We therefore leave it as it is, and arrive at the following result:
Debit: Attorney’s fee:
The following are the reasons for not allowing that amount. The leading counsel in matter of removing the interdiction stated that $1,000 is an ample fee for all services rendered.
Two thousand dollars were paid.
The plaintiff did not take an active part as an attorney. He made no argument in court, examined no witnesses, made no suggestion to the court. His name does not appear as attorney in any of the proceedings.
Defendant testified that she did not know that the amount was charged in 'the account of July, 1906, numbered 207. She further testified that she assumed at the time that in contracting to pay plaintiff the salary stated in the contract it included everything in the way of services.
From her statement plaintiff never at any time claimed the fee in question.
Another item added to “debit” is the sum of $2,300, identified by reference to the 'Stubb loan.
When this item was called to the attention of plaintiff, he said that the expert bookkeeper who had prepared the account would explain and show that it is correct.
The testimony does not sustain it.
In matter of the Union Oil Company:
Amount -of a check............... $ 573 14
Statement of account current of J. M. Parker & Co., amount drawn by plaintiff..................... 1,5S3 01
Amount paid to hands on the De Mors place..................... 602 33
List of drafts of plaintiff as per account ’......................... 3,157 73
$ 8.216 23
As against credit................. 7,979 97
$16,106 02
Leaving a balance against plaintiff of......................... $ S,2.16 23
We will state in conclusion, there is a concurrence of facts excluding the possibility of rendering judgment in favor of plaintiff.
We add that there is a standard of diligence to which one should conform when in charge of the property of another, who, as in this instance, is an old lady, who had been placed in an asylum at different times.
She was not accustomed to plantation management, and was unable to judge of the efficiency of such management.
For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended by increasing the amount allowed to defendant in' reconvention to the sum of $8,216.23. As amended, the judgment is affirmed. The right of defendant to her jewelry is reserved, plaintiff and appellant to pay the costs of appeal.